STATE OF RHODE ISLAND
KENT, SC.

SUPERIOR COURT

WILLIAM C. STONE and CAROLYN MARK

RECEIVED
JUL 14 2005
U.S. ATTORNEY
DISTRICT OF R.I.

v.

C.A. NO: KC 05-0570

THE UNITED STATES OF AMERICA
(DEPARTMENT OF THE TREASURY
– INTERNAL REVENUE SERVICE)

**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT,**
**INJUNCTIVE RELIEF AND TO CLEAR TITLE**

**JURISDICTION**

This action is brought pursuant to R.I.G.L. 1956 § 9-30-1 et seq., 34-16-1; 34-11-33, Rule 57 R.C.P. and 28 U.S.C. § 2410(a)(1):

**PARTIES AND BACKGROUND**

1. The Plaintiffs, William C. Stone and Carolyn Mark (hereinafter collectively "The Plaintiffs") are the current owners of 99 Larch Road, East Greenwich, County of Kent, State of Rhode Island (hereinafter "the subject premises").

2. Upon information and belief, Zachery Ashton a/k/a Zachary Ashton (hereinafter "Ashton") is a resident of the State of North Carolina and was a prior owner and vendor of the subject premises.

3. Crescent Mortgage Services (hereinafter "Crescent") is a New Hampshire corporation at all times relevant doing business in the State of Rhode Island and having a principal place of business in the City of Manchester, New Hampshire. Crescent was the original holder of a first priority, purchase-money mortgage in the face of amount of Three Hundred Sixty Thousand ($360,000.00) Dollars. The Crescent note and mortgage provided the security for funds used to secure the purchase of the subject premises by the Plaintiffs.

4. Gary H. Beachum and Katherine T. Beachum (hereinafter "The Beachums") are, upon information and belief, residents of the State of North Carolina who were prior tenants at, and mere transitory titleholders to, the subject premises.

5. Defendant United States of America is named herein as the alleged holder of a purported Federal Tax Lien in the amount of $39,026.04 dated on or about April 24, 2002, as against The Beachums. (The United States of America (Department of the Treasury – Internal Revenue Service) are hereinafter collectively referred to as "The IRS")

6. The Plaintiffs and the Defendant are holders of presently conflicting purported interests in the "subject premises" and are the only necessary parties to the particular relief requested herein.

## ABSTRACT OF TITLE

7. Paragraphs 1-6 are incorporated herein by reference.

8. Upon information and belief, on or about December 1, 2001, Ashton was the owner of the subject premises.

9. Upon information and belief, Ashton purchased the subject premises with funds provided by Principal Residential Mortgage, Inc. (hereinafter "PRM"), the holder of a first priority purchase money mortgage.

10. Upon information and belief, shortly thereafter, Ashton entered into an unrecorded leasing agreement with The Beachums for the term December 1, 2001 through December 31, 2005. (See **Exhibit 1)**

11. Upon information and belief, pursuant to the terms of that unrecorded lease, Ashton also offered to sell the property to the lessee(s) for an amount "not to exceed the balance of existing mortgages on said property plus $77,600.00 on or before December 31, 2005." (See **Exhibit 1, para 6**).

12. Upon information and belief, on or about July 31, 2001, The Beachums filed Chapter 7 Bankruptcy Petition No. 01-BK-12984 in the Federal Bankruptcy Court for the District of Rhode Island.

13. Upon information and belief, pursuant thereto The Beachums, under oath, divulged the existence of a "5 year lease starting 1/1/01" with Ashton (See **Exhibit 1A**, Schedule G, paragraph 1), but

denied any other property interests in the premises. (See **Exhibit 1A** - Financial Statement, paragraph 14 and Debtor's Statement).

14. Upon information and belief, the IRS was listed as a creditor and was notified of all proceedings (**Exhibit 1A** - Creditors Matrix).

15. Upon information and belief, on or about October 25, 2001, The Beachums were granted a Discharge in Bankruptcy after notice to the IRS. (See **Exhibit 1B**).

16. On or about April 29, 2002, while The Beachums were lessees of the subject premises, the IRS recorded a "Notice of Federal Tax Lien" in the amount of $39,026.04 in the Land Evidence Records of the Town of East Greenwich (See **Exhibit 2**). At the time of such recordation, record title to the subject property remained in Ashton.

17. Although The Beachums were mere lessees, holding only Ashton's unrecorded offer to sell the premises to them, they proceeded to market the subject premises for sale through a realtor as though they were the owners in fee.

18. Thereafter, on or about December 27, 2002, the Plaintiffs and The Beachums entered into a purchase and sale agreement for the transfer of the subject premises in exchange for $450,000.00 on or before April 30, 2003 (See **Exhibit 3, paras 3 and 4**).

19. Although The Beachums were, unbeknownst to the Plaintiffs, not the owners of the subject premises, The Beachums warranted that they were "the fee title" owners of the property and that they had

> "the authority and capacity to enter into this agreement
> and consummate the transaction contemplated herein.
> (See **Exhibit 3 at para 10**).

20. After entering into the Purchase and Sale Agreement, and prior to the closing, the Plaintiffs learned that Ashton was the actual owner. In order to close the sale pursuant to the specific terms of the Purchase and Sale Agreement, Ashton authorized the closing attorneys for Crescent, to directly satisfy the pre-existing purchase money mortgage held by Principal Residential Mortgage, then having an outstanding balance of $272,782.89. (See **Exhibit 4**).

21. At the closing on April 30, 2003, the Plaintiffs and Crescent did in fact deliver all purchase money funds to the closing attorneys in the total amount of $450,000.00. The proceeds of the closing were distributed as shown on the closing statement dated April 30, 2003. (See **Exhibit 5**).

22. In so doing, the Plaintiffs provided purchase money in the amount of $450,000 including amounts which paid off and satisfied the interests of any and all recorded owners (Ashton) and recorded interest holders (PRM) as of April 30, 2003; all of which pre-dated the interests, if any, of The Beachums and the IRS. (See checks attached as **Exhibit 6**).

23. By authorization of Ashton, or his attorneys, the closing attorneys were directed to distribute the amount of $59,502.10 of the amount otherwise due to the owner Ashton, to The Beachums apparently in settlement of any claims against Ashton under paragraph 6 of the unrecorded leasing agreement. (See **Exhibit 1, para 6**).

24. In order to rectify the otherwise inaccurate and inconsistent terms of paragraph 10 of the purchase and sales agreement (**Exhibit 3**), and to induce the Plaintiffs to supply purchase money funds in accordance with that agreement, Ashton executed a Quitclaim Deed to The Beachums which was held in escrow at the closing. (See **Exhibit 7**).

25. In order to conform the transfer to the terms of the purchase and sale agreement, The Beachums also executed a Warranty Deed to the Plaintiffs which was simultaneously held in escrow pending the closing and payment of the proceeds as previously directed by Ashton. (See **Exhibit 8**). The Warranty Deed (**Exhibit 8**) was recorded in the Land Evidence Records of the Town of East Greenwich within seconds of the Ashton Quitclaim Deed (**Exhibit 7**).

26. In order to finance the purchase of the subject premises, the Plaintiffs provided funds in the total amount of $450,000.00 to discharge all pre-existing interests as aforesaid. As security therefore, the Plaintiffs secured the property with an intended first priority purchase money mortgage. (Attached as **Exhibit 9**). All title documents were simultaneously recorded in the Land Evidence Records on May 1, 2003 at 3:41 p.m. (See **Exhibits 7, 8 and 9**).

27. On and after April 30, 2003, the Plaintiffs, as bona fide purchasers for value, occupied, owned, financed, maintained and resided at the subject premises believing the property to be theirs in fee simple subject only to the Crescent mortgage.

28. On about October 13, 2004, the IRS advised the Plaintiffs of the notice of tax lien which was filed against the prior lessees, The Beachums, and demanded payment from the Plaintiffs in the amount of $52,649.60 in order to satisfy The Beachums' delinquent tax obligations. Prior to such notification, the Plaintiffs had no actual knowledge of the alleged Beachum IRS lien.

29. The IRS demand allegedly rests upon the contention that the Quit Claim Deed to the Beachums (which was recorded seconds before the Plaintiffs' Deed and operated merely as a transitory, technical and instantaneous device, drafted solely to conform the record to the terms of the otherwise inconsistent purchase and sales agreement) created an "after-acquired", attachable property interest.

## COUNT I

## DECLARATORY JUDGMENT (CONFIRMATION OF ACTUAL TITLE)

30. The allegations contained in paragraphs 1 –29 are incorporated herein by reference.

31. Upon information and belief, at all times relevant Ashton, in return for purchase money in the amount of $450,000 supplied solely by the Plaintiffs, nominally transferred his interests in the subject property to The Beachums at closing on April 30, 2003 solely as a vehicle to accomplish the ultimate conveyance of his rights, title and interests in the subject premises to the Plaintiffs. The transaction was consummated in order that he might sell, and the Plaintiffs purchase, the property and hold title "as joint tenants by a good and sufficient deed with warranty covenants".

32. Upon information and belief, it was also the intent of Ashton to require the Plaintiffs to directly satisfy and discharge the pre-existing purchase money priority mortgage of PRM and to provide funds for the purchase of the subject premises at fair market value. Subsequent to the sale to the

Plaintiffs, Ashton apparently satisfied and settled the Beachums' claims against him under the terms of their unrecorded lease with the proceeds.

33. The funds delivered by the Plaintiffs in escrow at closing on April 30, 2003 actually funded the purchase of the property at fair market value from the owner in fact, Ashton and benefited the original purchase money mortgagee – Principal Residential Mortgage. Now, absent the Plaintiffs' own direct and affirmative intervention at this time, and without immediate Court action on this Complaint for Declaratory Judgment, the Plaintiffs will be unable to correct the resulting technical deficiency in title and the unintended cloud on title created by the appearance of the transitory Quit-Claim Deed to The Beachums and the previously undetected IRS lien against the Beachums alleged after-acquired interests.

34. The Plaintiffs' rights, status, legal relations and responsibilities, as well as those of various other persons and parties, including future purchasers of the subject premises and bona fide mortgagees, may be adversely and irreparably affected if the Court does not forthwith, enter a declaratory judgment conforming, declaring and/or reforming the title consistent with the actions and intention of all parties. Specifically, the Plaintiffs request that the title be reformed by confirming that the transfer from Ashton to Plaintiffs was accomplished free and clear of any technical or transitory interests of the Beachums and the IRS. The Plaintiffs also pray that any interests of the Defendant in or to the subject property, be declared equitably and legally discharged, barred, subrogated and/or subordinated to the interests of the Plaintiffs, their heirs, mortgagees, successors and assigns.

35. The Plaintiffs and Defendant have not resolved their differences although it was intended and understood that the subject premises were to be duly vested free and clear of all encumbrances in the Plaintiffs as referenced by paragraph 31 hereof.

WHEREFORE, the Plaintiffs demand as follows:

1. That title to the subject premises be reformed in accordance with the intention of the parties as prayed so as to confirm a fee simple estate in the Plaintiffs, their heirs, mortgagees, successors and assigns, subject only to the interest of record of the current mortgage.

2. That the Plaintiffs' interest be declared primary to, and exclusive of, any unintended or otherwise remaining claims or interests of the Defendant.

3. Declaring that any and all claims and interests of the IRS in the subject premises are discharged, released and void.

4. For such other and further relief as may be deemed just and proper under the circumstances.

## COUNT II

## (TRANSITORY SEIZIN)

36. Paragraphs 1-35 are incorporated herein by reference.

37. The recorded interests of the IRS and The Beachums, if any, which may have resulted from the recordation of the Ashton Quit-Claim Deed were merely "transitory" and "instantaneous" in nature. Accordingly, the Ashton Quit-Claim Deed did not effectively pass attachable interests to The Beachums or the IRS in law or in equity.

38. Such transitory, instantaneous or technical interests of The Beachums were accordingly never subject to any purported interests claimed by the IRS. As a result thereof, the Plaintiffs obtained sole title and right to the subject premises by means of the Warranty Deed recorded on May 1, 2003 and by operation of the Doctrine of "transitory" or "instantaneous seizin".

39. By virtue of the instruments of record and the alleged interests of the IRS, a defect exists in the Plaintiffs' title and judicial relief is necessary to remove the existing encumbrance and cloud on title.

WHEREFORE, the Plaintiffs pray for judgment as follows:

1. Declaring the sole and exclusive title of Plaintiffs to be established and vested by operation of the Doctrine of "Transitory Seizin" to the exclusion of Defendant and subject only to any subsequent duly recorded encumbrances granted by the Plaintiffs.

2. Declaring the purported interests of the Defendant to be legally and equitably discharged, extinguished, abandoned, vitiated and rendered null and void.

3. For such other and further relief as may be just and proper.

4. Awarding the Plaintiffs their costs, damages and expenses in removing the alleged encumbrance pursuant to R.I.G.L. § 34-11-33.

## COUNT III

## EQUITABLE SUBROGATION AND SUBORDINATION

40. Paragraphs 1-39 are incorporated herein by reference.

41. The Plaintiffs' funds were directly and actually paid to satisfy existing priority, purchase money encumbrances and to purchase the subject property. Such payments were made by the Plaintiffs to protect their own interests, not as volunteers, for debts for which they were not previously liable, in satisfaction of the entirety of the pre-existing debt, and not in detriment to the rights of others. (See Han v. United States, 944 F.2d 526 (9th Cir. 1991)). Such payments are accordingly superior to any purported remaining interests of the IRS.

42. Additional proceeds supplied by the Plaintiffs were paid and applied directly to the satisfaction of various fees, commissions, taxes, liens and costs relating to the purchase, financing, upkeep, enhancement, re-financing, maintenance and preservation of the subject premises.

43. Any purported interests of the IRS are accordingly both equitably and legally dischargeable, and are fully subrogated and subordinated to the Plaintiffs' priority interests. See Potter v. U.S., 111 F. Supp. 585 (D.R.I. 1953).

## COUNT IV

## QUIET TITLE

44. Paragraphs 1-43 are incorporated herein by reference.

45. The Plaintiffs are entitled to an Order of this Court removing any cloud on their title to and ownership in the subject premises, quieting title in them pursuant to R.I.G.L. § 34-16-1 et seq. and to damages and expenses incurred pursuant to R.I.G.L. § 34-11-33.

## COUNT V

## MARSHALING

46. Paragraphs 1-45 are herein incorporated by reference.

47. The Plaintiffs were, and are, bona fide purchasers for value who took title to, and solely maintained, the subject property for valuable consideration without actual knowledge of the purported interests, if any, of the IRS.

48. To the extent that the IRS obtained or retained any valid interest in the subject premises, which such interest is specifically denied, the IRS is upon information and belief currently able to pursue several other sources of repayment for the alleged indebtedness owed by The Beachums.

49. Such alternative sources include the assets and property of The Beachums, the assets and property of Ashton; and any and all proceeds of the closing distributed to The Beachums or Ashton on April 30, 2003.

50. The Plaintiffs have no adequate remedy at law and the Defendant IRS should marshal its assets, in equity accordingly.

WHEREFORE, the Plaintiffs pray that judgment enter in their favor as follows:

1. Declaring the interests of the Defendant in the subject property to be unenforceable, illegal, cancelled, null and void.

2. Ordering the IRS to marshal otherwise available and identifiable assets as against The Beachums and and/or Ashton.

3. Quieting and declaring title to the subject property as duly vested in the Plaintiffs and/or their successors in interest.

4. Alternatively, declaring the interests of the Defendant to be equitably extinguished and/or subrogated and subordinated to the superior title of the Plaintiff in the subject property.

5. Directing the Defendant to execute any and all instruments necessary to effectuate the discharge of their interests of record.

6. For such other and further relief as may be just and proper, including damages, costs and expenses.

**COUNT VI**

**PRIORITY OF "PURCHASE-MONEY" INTERESTS OVER THE FEDERAL TAX LIEN**

51. Paragraphs 1-50 are incorporated herein by reference.

52. The $450,000 "purchase-money" amount provided by the Plaintiffs at closing has legal and equitable priority over any prior tax lien asserted by the Defendant.

53. The Crescent mortgage was a "purchase-money mortgage", and the proceeds thereof were actually used to apply to the purchase price.

54. All other funds provided by or on behalf of the Plaintiffs Stone and Mark were similarly applied to the purchase of the property from Ashton and are also entitled to "purchase-money" priority.

55. If the Beachums are the technical transferors of the funds, the Plaintiffs are entitled in law and in equity to priority interests as "purchase-money mortgagees" as they supplied funds to the transitory purchasers to enable them to consummate the purchase and requisition of the subject property.

56. The Plaintiffs will suffer irreparable harm unless their interests are declared primary to those of the IRS as requested herein.

WHEREFORE, The Plaintiffs pray that judgment enter in their favor as follows:

1. Declaring the interests of the Defendant in the subject property to be unenforceable, illegal, cancelled, null and void.

2. Declaring any and all rights and interests of the Defendant in the subject property to have been exhausted, extinguished and barred.

3. Quieting and declaring title to the subject property as duly vested in the Plaintiffs and/or their successors in interest.

4. Alternatively, declaring the interests of the Defendant to be equitably extinguished and/or subrogated and subordinated to the superior title of the Plaintiffs in the subject property.

5. Directing the Defendant to execute any and all instruments necessary to effectuate the discharge or conveyance of their interests of record to the Plaintiffs.

6. For such other and further relief as may be just and proper, including an award of damages and expenses pursuant to R.I.G.L. § 34-11-33.

7. Alternatively, ordering the IRS to marshal its assets.

Respectfully submitted,
WILLIAM C. STONE and CAROLYN MARK

By their Attorneys:

[signature]

James P. Marusak, #2470
Gidley, Sarli & Marusak, LLP
One Turks Head Place, Suite 900
Providence, RI 02903
(401) 274-6644; (401) 331-9304 fax

DATED: 6/24/05

## VERIFICATION

I, William C. Stone, one of the Plaintiffs herein, on oath depose and say that I have read the above-referenced allegations contained in paragraphs 1-56 and they are true to the best of my knowledge and belief.

[signature]

WILLIAM C. STONE

Subscribed and sworn to before me on this 16th day of June, 2005.

[signature]

Notary Public Suzanne I. Marsacci
My Commission Expires: 6/19/2005